IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **SUZANNE KUNTZE**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:18cv38 |
| ) | |
| **JOSH ENTERPRISES, INC.**, ) | |
| D/B/A JACKSON HEWITT TAX SERVICE ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Suzanne Kuntze, by counsel, and for her Complaint against Defendant Josh Enterprises, Inc., d/b/a Jackson Hewitt Tax Service, alleges as follows:

### NATURE OF THE ACTION

1. This is an action for compensation from Defendant Josh Enterprises's purposeful failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Chapter 8.

2. Pursuant to Plaintiff's rights under 29 U.S.C. § 216 (b), Plaintiff seeks her unpaid overtime compensation, an additional equal amount as liquidated damages, and attorney's fees and costs.

## PARTIES

3. Suzanne Kuntze (hereinafter "Plaintiff" or "Mrs. Kuntze") is an individual who is currently a resident of Virginia Beach, Virginia. She is an employee of Defendant.

4. Josh Enterprises, Inc., d/b/a Jackson Hewitt Tax Service (hereinafter "Defendant" or "Josh") is a corporation organized under the laws of the Commonwealth of Virginia and has its principal place of business in Virginia Beach, Virginia.

## JURISDICTION AND VENUE

5. This action arises under the FLSA, 29 U.S.C. Chapter 8.

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because it presents a federal question as the claim arises under the laws of the FLSA.

7. This suit arises under the penalty provisions of the FLSA 29 U.S.C. § 216 (b), which permits an action to recover against employers who violate the FLSA in any Federal or State court of competent jurisdiction.

8. The Norfolk Division of the Eastern District of Virginia is the appropriate venue, because the Plaintiff is employed by the Defendant in Virginia Beach, Virginia, a division within this district; and Defendant's principle place of business is also in Virginia Beach, Virginia.

## FACTUAL BACKGROUND

9. Suzanne Kuntze worked as an employee for Jackson Hewitt Tax Service ("Jackson Hewitt") through Vine Enterprises, Inc. ("Vine") from 2005 until Vine's transfer of ownership of the Jackson Hewitt branch to Josh. While employed by Vine, Mrs. Kuntze worked

as a manager with the right to hire and fire, schedule and supervise employees, make business decisions, and allocate resources of the branch. Vine classified Mrs. Kuntze as an Area Manager, and paid her a base salary $35,000. Notably, Mrs. Kuntze employment agreements with Vine ran for year long terms. For example, her 2014 Employment Agreement paid her the base salary of $35,000 paid bi-weekly from January 1, 2014 until December 31, 2014. *See* 2014 Employment Agreement a true and correct copy of which is attached hereto as Exhibit A.

10. Vine transferred ownership of Mrs. Kuntze's store on or around December 19, 2014 to Josh. At the beginning of the new tax season in January 2015, Josh's General Manager Ethel Breland approached Mrs. Kuntze with an Employment Agreement. Ms. Breland did not discuss the terms in any way with Mrs. Kuntze, but simply directed Mrs. Kuntze to sign the agreement if she wanted to get paid. *See* 2015 Employment Agreement a true and correct copy of which is attached hereto as Exhibit B.

11. The 2015 Employment Agreement changed Mrs. Kuntze's title to "Manager," and stated that the she "must comply with all responsibilities associated with [her] position as manager including but not limited to responsibilities listed in the office manager job description attached." However, no such job description was attached to the agreement, nor was one ever provided to Mrs. Kuntze.

12. Notably, despite her title as "manager," Josh removed Mrs. Kuntze's prior authority to hire and fire, schedule and supervise employees, make business decisions or allocate resources of the business. Instead, Josh relegated Mrs. Kuntze's work duties solely to those of a

regular customer service tax preparer without any other managerial functions.

13. The 2015 Employment Agreement stated that Mrs. Kuntze would be paid a bi-weekly salary of $1280.00 which equated to an annualized salary of $33280. Neither Josh nor Ethel Breland ever discussed with Mrs. Kuntze the amount of hours required to earn her salary, and the agreement only stated that she would work hours to meet "customer demands." In reality, Mrs. Kuntze was consistently required to work well over 60 hours per week without any additional compensation.

14. The 2015 Employment Agreement stated Mrs. Kuntze's salary would only be effective through April 30, 2015. The agreement did not disclose what Mrs. Kuntze's pay would be after April 30, 2015. Further, Josh never discussed with Mrs. Kuntze what her pay would be after that time.

15. After April 30, 2015, Josh switched Mrs. Kuntze to compensation paid on an hourly wage, and reduced her hours to significantly less than 40 hours per week. At no point did Josh change Mrs. Kuntze's functions or responsibilities to anything other than a regular customer service tax preparer.

16. On December 31, 2015 Ethel Breland informed Mrs. Kuntze that in order to keep her position with Josh, she must execute a new employment agreement. This agreement once again switched Mrs. Kuntze to a bi-weekly salary of $1280.00, and terminated on April 30, 2016. The 2016 Employment Agreement changed Mrs. Kuntze's title to "Shift Supervisor". *See* 2016 Employment Agreement a true and correct copy of which is attached hereto as Exhibit C.

17. Despite the change in title, Mrs. Kuntze's functions did not change from those of a regular customer service tax preparer. Mrs. Kuntze did not have any supervisory functions. She did not have the ability to hire and fire, schedule or supervise employees, make business decisions or allocate resources. The only change in Mrs. Kuntze's job outside the new agreement was that rather than work less than 40 hours per week on an hourly basis, she was required to work over 60 hours per week with no overtime compensation.

18. Just as in 2015, for the 2016 Josh had no discussion with Mrs. Kuntze as to the reason for the salary, and what hours the salary was meant to cover.

19. After April 30, 2016 and for the remainder of the year, Josh switched Mrs. Kuntze back to an hourly position with less than 40 hours of work required per week. Outside of the change in hours, Mrs. Kuntze's functions remained exactly the same as during the first four months of 2016.

20. On January 19, 2017, Josh once again required Mrs. Kuntze to sign an employment agreement changing her compensation to salary. Similar to the past years, Mrs. Kuntze received compensation of a bi-weekly salary of $1330.00 with no hourly cap, which automatically reverted to hourly compensation after April 30, 2017. *See* 2017 Employment Agreement a true and correct copy of which is attached hereto as Exhibit D.

21. Outside of the change in hour requirement, Mrs. Kuntze's functions remained exactly the same as they were the past two years, those of a regular customer service tax preparer without the authority to hire and fire, schedule or supervise employees, make business decisions

or allocate resources.

22. Clearly, the sole purpose behind switching Mrs. Kuntze's pay from hourly to salary without any other change in function during tax season was to avoid paying her overtime. Moreover, Josh never discussed its purpose in forcing Mrs. Kuntze to sign the employment agreements, nor did Mrs. Kuntze ever understand that the salary was meant to cover her extended hours beyond a 40 hour workweek.

23. Actually, Mrs. Kuntze maintained daily timecards during her employment with Josh in the hopes she would eventually be compensated for her hours worked beyond 40 during the busy tax seasons. Specifically, her timecards show the following hours in excess of 40 hours per week worked during the 2015-17 tax seasons:

| Week Begins | OT Hours |
|---|---|
| 1/5/2015 | 8.74 |
| 1/12/2015 | 7.99 |
| 1/19/2015 | 4.58 |
| 1/26/2015 | 11.59 |
| 2/2/2015 | 5.14 |
| 2/9/2015 | 11.92 |
| 2/16/2015 | 8.12 |
| 3/9/2015 | 13.58 |
| 3/16/2015 | 14.02 |
| 3/23/2015 | 13.25 |
| 3/30/2015 | 13.72 |
| 4/6/2015 | 7.56 |
| 4/13/2015 | 0.76 |
| **Subtotal:** | **120.97** |

| Week Begins | OT Hours |
|---|---|
| 1/18/2016 | 8.33 |
| 1/25/2016 | 7.82 |
| 2/1/2016 | 16.68 |
| 2/8/2016 | 11.96 |
| 2/15/2016 | 8.12 |
| 2/22/2016 | 2.93 |
| 2/29/2016 | 1.55 |
| 3/7/2016 | 17.46 |
| 3/14/2016 | 13.33 |
| 3/21/2016 | 8.76 |
| 3/28/2016 | 13.24 |
| 4/4/2016 | 10.85 |
| 4/11/2016 | 30.1 |
| **Subtotal:** | **151.13** |

| Week Begins | OT Hours |
|---|---|
| 1/16/2017 | 21.24 |
| 1/23/2017 | 17.64 |

| Date | Hours |
|---|---|
| 1/30/2017 | 24.54 |
| 2/6/2017 | 23.57 |
| 2/13/2017 | 24.18 |
| 2/20/2017 | 11.37 |
| 2/27/2017 | 14.7 |
| 3/6/2017 | 19.48 |
| 3/27/2017 | 19.12 |
| 4/3/2017 | 30.75 |
| 4/10/2017 | 38.84 |
| 4/17/2017 | 8.02 |
| 4/24/2017 | 1.11 |
| **Subtotal:** | **254.56** |

Altogether, Mrs. Kuntze worked 526.66 total hours of uncompensated overtime. True and correct copies of Mrs. Kuntze 2015 timecards are attached hereto as Exhibit E, 2016 timecards are attached hereto as Exhibit F, and 2017 timecards are attached hereto as Exhibit G.

 24. Mrs. Kuntze's further reveal she worked 16.5 hours of uncompensated regular time, as follows:

**UNPAID TRAINING**

| Date | Hours |
|---|---|
| 1/3/2015 | 4 |
| 1/4/2015 | 2.5 |
| 12/29/2015 | 2 |
| 12/31/2015 | 2 |

| | |
|---|---|
| Jan-17 | 6 |
| Total: | 16.5 |

## COUNT I
### DEFENDANT JOSH WILLFULLY MISCLASSIFIED PLAINTIFF AS AN EXEMPT EMPLOYEE FOR THE EXPRESS PURPOSE OF AVOIDING THE OVERTIME REQUIREMENTS OF THE FLSA

25. Plaintiff incorporates the allegations in Paragraphs 1 through 24, as if fully restated herein.

26. Josh purposely avoided the FLSA overtime requirements by switching Mrs. Kuntze from compensation on a salary basis during tax season to an hourly basis all other months of the year. Josh's actions show a clear understanding of the FLSA overtime requirements, and a willful intent to disregard them.

27. Altogether for the past three years, Josh willfully avoided paying Mrs. Kuntze for 526.66 hours of unpaid overtime and an additional 16.5 hours of unpaid training. Mrs. Kuntze seeks compensation for three years of unpaid overtime and unpaid wages from Josh's willful violation according to the following pay scale:

| Week Begins | OT Hours | 1.5 Rate | Amount |
|---|---|---|---|
| 1/5/2015 | 8.74 | $24.00 | $209.76 |
| 1/12/2015 | 7.99 | $24.00 | $191.76 |
| 1/19/2015 | 4.58 | $24.00 | $109.92 |
| 1/26/2015 | 11.59 | $24.00 | $278.16 |

| Week Begins | OT Hours | 1.5 Rate | Amount |
|---|---|---|---|
| 2/2/2015 | 5.14 | $24.00 | $123.36 |
| 2/9/2015 | 11.92 | $24.00 | $286.08 |
| 2/16/2015 | 8.12 | $24.00 | $194.88 |
| 3/9/2015 | 13.58 | $24.00 | $325.92 |
| 3/16/2015 | 14.02 | $24.00 | $336.48 |
| 3/23/2015 | 13.25 | $24.00 | $318.00 |
| 3/30/2015 | 13.72 | $24.00 | $329.28 |
| 4/6/2015 | 7.56 | $24.00 | $181.44 |
| 4/13/2015 | 0.76 | $24.00 | $18.24 |
| **Subtotal:** | **120.97** | | **$2,903.28** |

| Week Begins | OT Hours | 1.5 Rate | Amount |
|---|---|---|---|
| 1/18/2016 | 8.33 | $24.00 | $199.92 |
| 1/25/2016 | 7.82 | $24.00 | $187.68 |
| 2/1/2016 | 16.68 | $24.00 | $400.32 |
| 2/8/2016 | 11.96 | $24.00 | $287.04 |
| 2/15/2016 | 8.12 | $24.00 | $194.88 |
| 2/22/2016 | 2.93 | $24.00 | $70.32 |
| 2/29/2016 | 1.55 | $24.00 | $37.20 |
| 3/7/2016 | 17.46 | $24.00 | $419.04 |
| 3/14/2016 | 13.33 | $24.00 | $319.92 |
| 3/21/2016 | 8.76 | $24.00 | $210.24 |
| 3/28/2016 | 13.24 | $24.00 | $317.76 |
| 4/4/2016 | 10.85 | $24.00 | $260.40 |

| Week Begins | OT Hours | 1.5 Rate | Amount |
|---|---|---|---|
| 4/11/2016 | 30.1 | $24.00 | $722.40 |
| **Subtotal:** | **151.13** | | **$3,627.12** |

| Week Begins | OT Hours | 1.5 Rate | Amount |
|---|---|---|---|
| 1/16/2017 | 21.24 | $24.95 | $529.94 |
| 1/23/2017 | 17.64 | $24.95 | $440.12 |
| 1/30/2017 | 24.54 | $24.95 | $612.27 |
| 2/6/2017 | 23.57 | $24.95 | $588.07 |
| 2/13/2017 | 24.18 | $24.95 | $603.29 |
| 2/20/2017 | 11.37 | $24.95 | $283.68 |
| 2/27/2017 | 14.7 | $24.95 | $366.77 |
| 3/6/2017 | 19.48 | $24.95 | $486.03 |
| 3/27/2017 | 19.12 | $24.95 | $477.04 |
| 4/3/2017 | 30.75 | $24.95 | $767.21 |
| 4/10/2017 | 38.84 | $24.95 | $969.06 |
| 4/17/2017 | 8.02 | $24.95 | $200.10 |
| 4/24/2017 | 1.11 | $24.95 | $27.69 |
| **Subtotal:** | **254.56** | | **$6,351.27** |
| **Total:** | **526.66** | | **$12,881.67** |

28. Mrs. Kuntze further seeks payment for the following unpaid compensation:

**UNPAID TRAINING**

| Date | Hours | Rate | Amount Owed |
|---|---|---|---|

10

| | | | |
|---|---|---|---|
| 1/3/2015 | 4 | $16.00 | $64.00 |
| 1/4/2015 | 2.5 | $16.00 | $40.00 |
| 12/29/2015 | 2 | $16.00 | $32.00 |
| 12/31/2015 | 2 | $16.00 | $32.00 |
| Jan-17 | 6 | $16.63 | $99.78 |
| **Total:** | **16.5** | | **$267.78** |

29. In total, Mrs. Kuntze seeks damages in the amount of $13,149.45 plus attorney's fees and costs for her unpaid overtime and regular wages, and Josh's willful violation of the FLSA overtime requirements.

## COUNT II
## LIQUIDATED DAMAGES AND ATTORNEY FEES FOR DEFENDANT JOSH'S FAILURE TO EXERCISE GOOD FAITH IN ITS CLASSIFICATION OF MRS. KUNTZE AS AN "EXEMPT EMPLOYEE"

30. Plaintiff incorporates the allegations in Paragraphs 1 through 29, as if fully restated herein.

31. In 2015 Josh classified Mrs. Kuntze as a "manager," then switched her classification to "shift supervisor" in 2016 and 2017 without any explanation of the change or any change in duties.

32. Despite her titles, Mrs. Kuntze did not possess any the authority to hire and fire, schedule or supervise employees, make business decisions or allocate resources. Her work remained that of a regular customer service tax preparer without any other managerial functions. As her employer, Josh was directly aware of the functions Mrs. Kuntze performed on a daily

11

*Suzanne Kuntze v. Josh Enterprises, Inc.*
*Complaint*

33. Further, Josh purposely switched Mrs. Kuntze's pay to hourly compensation in the offseason knowing that her hours were significantly reduced from the tax season. Josh's sole purpose in toggling Mrs. Kuntze's pay was to avoid paying her overtime for her hours worked beyond 40 in a workweek.

34. Josh simply cannot assert a single good faith belief that Mrs. Kuntze meets any of the tests below for any year from 2015-17, in order to qualify her as an exempt employ employed in a bona fide executive capacity, let alone a good faith belief that she would meet all of them:

   a. The employee must be compensated on a salary basis at a rate not less than $455 per week;

   b. The employee's primary duty must be managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise;

   c. The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and

   d. The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight. 29 CFR 541.100 General Rule for Executive Employees.

35. Further, Josh cannot assert any good faith reason Mrs. Kuntze would qualify as a bona fide administrative, professional, computer or outside sales employee.

36. Josh repeatedly chose to misclassify Mrs. Kuntze as an exempt employee for the

sole purpose of avoiding paying her overtime during the 2015-17 tax seasons.

37. Accordingly, Mrs. Kuntze claims liquidated damages in the amount of $26,298.90 plus all attorney fees and costs incurred from Josh's bad faith misclassification of her as an exempt employee.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the entry of a final order for relief and judgment against the Defendant, for its willful violations of 29 U.S.C. §207 and §216, as follows:

1. $267.78 as recompense for unpaid time worked,

2. $535.56 as liquidated damages for willful failure to pay for hours worked,

3. $12,881.67 as recompense for unpaid overtime worked,

4. $25,763.34 as liquidated damages for willful failure to pay for overtime hours worked,

5. Plaintiff's attorney's fees and costs in this action, and

6. Such other and further relief as the Court may deem appropriate.

JURY TRIAL DEMANDED

Dated January 19, 2018

                                                  Respectfully submitted,

                                                  _____

                                                  Matthew J. Weinberg
                                                  VA Bar No. 88664
                                                  *Counsel for* Suzanne Kuntze
                                                  GUNTHER LAW GROUP
                                                  4646 Princess Anne Road, Suite 101

Virginia Beach, VA 23462  
Telephone: (757) 671-3352  
Facsimile: (757) 671-3353  
matthew@guntherlaw.com

### CERTIFICATE OF MAILING

I hereby certify that on the 19th day of January, 2018, a true copy of the forgoing Complaint was filed electronically Clerk of Court using the CM/ECF system and was sent first class mail, postage prepaid to the following:

M. Richard Epps  
605 Lynnhaven Parkway, Suite 100  
Virginia Beach, VA 23452  
Registered Agent for Defendant

Joshua Jewitt  
VA Bar No. XXXXX  
Ervin Jewett, P.C.  
2400 Dominion Tower  
999 Waterside Drive  
Norfolk, Virginia 23510  
*Counsel for Defendant Josh Enterprises, Inc.*

By: _____  
Matthew J. Weinberg  
VA Bar No. 88664  
*Counsel for* Suzanne Kuntze  
GUNTHER LAW GROUP  
4646 Princess Anne Road, Suite 101  
Virginia Beach, VA 23462  
Telephone: (757) 671-3352

14

*Suzanne Kuntze v. Josh Enterprises, Inc.*  
*Complaint*

Facsimile: (757) 671-3353
matthew@guntherlaw.com