UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SUZANNE KUNTZE,

      Plaintiff,

v.                         Case No.: 2:18cv38

JOSH ENTERPRISES, INC., d/b/a,
*JACKSON HEWITT TAX SERVICE*,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on a motion to dismiss, for lack of subject matter jurisdiction and for failure to state a claim, filed by defendant Josh Enterprises, Inc. ("Defendant") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Def. Mot., ECF No. 9. Plaintiff Suzanne Kuntze ("Plaintiff") claims that Defendant violated the Fair Labor Standards Act ("FLSA") by purposefully misclassifying her as exempt from overtime, failing to pay her overtime, and failing to pay her at her regular rate for mandatory training hours. Defendant contends that (1) it already paid Plaintiff the money to which she is entitled under the "fluctuating workweek" calculation for overtime pay, thus mooting Plaintiff's overtime claim and depriving the Court of jurisdiction; (2) Plaintiff failed to state a claim for unpaid regular time; and (3) even if Plaintiff amends her claim for unpaid regular time, the claim would be moot because

Defendant already paid more than full relief.  Plaintiff responds that (1) the fluctuating workweek method does not apply to the overtime claim advanced in this case and, therefore, her claim for overtime is not moot; and (2) she adequately alleged a violation of the FLSA for unpaid regular hours.  Alternatively, Plaintiff requests that she be granted leave to amend the record, or that the Court permit the parties to conduct discovery, and that Plaintiff be granted leave to amend her complaint after discovery.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiff began working for Defendant, a tax service company, in 2015 after Defendant acquired ownership of Plaintiff's previous employer.  Plaintiff worked for her previous employer year-round since 2005.  Compl. ¶ 9, ECF No. 1.  In 2015, after taking over the company, Defendant gave Plaintiff the title of "Manager" and had her sign a new employment agreement.  Compl. ¶ 10-11.  Under the new agreement, Plaintiff worked as a seasonal employee making a bi-weekly salary of $1,280.00 during "tax season."  Compl. ¶ 13; Pl.'s Ex. B, ECF No. 1-2.  During the off season, she worked reduced hours at an hourly wage.  Compl. ¶ 14-15.  Plaintiff alleges that, notwithstanding her title as "Manager," Defendant took away her managerial job duties such as the ability to hire, fire, schedule, and supervise employees, reducing her

2

responsibilities to that of a "regular customer service tax preparer." Compl. ¶ 12.

At the end of 2015, Plaintiff was required to sign a new employment agreement to keep her position. Compl. ¶ 16. The agreement kept Plaintiff on a bi-weekly salary of $1,280.00 during the tax season and changed her title to "Shift Supervisor." Compl. ¶ 16; Pl.'s Ex. C, ECF No. 1-3. At the end of 2016, Defendant required Plaintiff to sign a new employment agreement which set her bi-weekly salary at $1,330.00 for the tax season. Compl. ¶ 20; Pl.'s Ex. D, ECF No. 1-4. None of the agreements capped Plaintiff's tax season hours, but all three required Plaintiff to clock-in and out. Pl.'s Exs. B, C, D. The agreements also noted that Defendant would schedule Plaintiff's hours "to meet [Defendant's] customer demands because customer demand fluctuates throughout Tax Season." Pl.'s Exs. B, C, D.

In a letter dated August 11, 2017, Plaintiff requested a $60,000 payment from Defendant to compensate her for unpaid overtime and regular time. Def.'s Ex. A, ECF No. 10-1. Defendant responded via counsel on November 18, 2017, with a letter stating that, while Defendant maintained that Plaintiff was exempt from overtime, it would nonetheless compensate Plaintiff for overtime based on the fluctuating workweek methodology. Def.'s Ex. C, ECF No. 10-3. With the letter, Defendant issued two checks purportedly "in full satisfaction of [Plaintiff's] claims against [her]

employer." Def.'s Ex. C. The letter explained that one check, in the amount of $5,977.72, was for uncompensated overtime calculated based on half of her regular hourly rate under the fluctuating workweek method, plus an additional, equal amount, for liquidated damages. Def.'s Ex. C. The second check, which was in the amount of $267.78, was intended to compensate Plaintiff at her regular hourly rate for the sixteen and a half regular hours that she spent completing mandatory training. Def.'s Ex. C. Plaintiff did not cash the two checks and instead filed her complaint in this case on January 19, 2018. Mem. in Support of Def.'s Mot. to Dismiss, ECF No. 10; Compl., ECF No. 1.

The day before Plaintiff filed her complaint, counsel for Defendant sent a letter to Plaintiff's counsel highlighting issues raised during an earlier phone conversation. Def.'s Ex. D, ECF No. 10-4. The letter again emphasized that Defendant believed Plaintiff was exempt from overtime pay, but claimed that even if she was not, Defendant had already given Plaintiff every dollar to which she was entitled under the proper calculation method in this jurisdiction. Def.'s Ex. D. Counsel for Plaintiff replied to Defense counsel's letter on January 19, 2018. Def.'s Ex. E, ECF No. 10-5. The letter from Plaintiff's counsel alleged that Defendant willfully misclassified Plaintiff as "exempt" from overtime payment, argued that the fluctuating workweek method was not applicable in this case, and demanded that Plaintiff be paid

4

based on a time-and-a-half calculation of overtime. Def.'s Ex. E. The letter claimed Plaintiff sought a total of $29,298.90 as a settlement payment, which covered overtime calculated at the time-and-a-half rate, unpaid training time at her regular rate, liquidated damages, and attorney's fees. Def.'s Ex. E.

On April 12, 2018, counsel for Defendant sent Plaintiff's counsel two cashier's checks, one for $267.78 as payment for training hours at Plaintiff's regular hourly rate, and one for $5,980.10 as payment for Plaintiff's overtime hours plus liquidated damages.[1] Def.'s Ex. F, ECF No. 10-6. The facts in the record do not state whether Plaintiff cashed or deposited the cashier's checks.

## B. Procedural Background

Defendant filed the instant motion to dismiss on April 16, 2018. Def.'s Mot., ECF No. 9. On July 11, 2018, the Court issued an order directing the parties to schedule oral argument on the motion to dismiss and to address controlling case law of the United States Court of Appeals for the Fourth Circuit that applied the half-time calculation of the fluctuating workweek method to misclassification cases. Order, ECF No. 17. The Court also directed Plaintiff to be prepared to address how discovery could alter the amount of damages recoverable, and whether willful

---

[1] Defendant's counsel explained that the slight difference in compensation from the first two checks is based on a different method of rounding used to calculate the amount owed.

misrepresentations of entitlement to overtime have any relevance to civil damages, in light of the FLSA's provision regarding criminal prosecution for willful violations. Order, ECF No. 17. The Court then held a hearing on the motion to dismiss on September 25, 2018.

## II. LEGAL STANDARD

### A. 12(b)(1) Motion to Dismiss

### 1. Facial v. Factual Challenge

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction may attack a complaint on its face, insofar as the complaint fails to allege facts upon which the court can base jurisdiction, or, as is the case here, it may attack the truth of any underlying jurisdictional allegations contained in the complaint. Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In the former situation, known as a facial challenge, the court is required to accept all of the complaint's factual allegations as true, "and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." Adams, 697 F.2d at 1219.

In the latter situation, known as a factual challenge, "the district court may regard the pleadings as mere evidence[2] on the

---

[2] "Mere evidence" is evidence used to establish an ultimate fact, also known as probative facts. See Belcher v. Tenn. Cent. Ry. Co., 377 S.W.2d 928, 931 (Tenn. 1964).

issue and may consider evidence outside the pleadings." Velasco
v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004) (citing
Adams, 697 F.2d at 1219). In explaining how district courts should
evaluate evidence presented in a factual challenge, the United
States Court of Appeals for the Fourth Circuit has indicated that
it depends on whether the jurisdictional facts are intertwined
with the merits facts. Kerns v. United States, 585 F.3d 187, 196
(4th Cir. 2009). Both scenarios are discussed below.

## 2. Facts Not Intertwined

When jurisdictional facts are not intertwined with the
merits, the trial court may weigh evidence and resolve factual
disputes to determine its jurisdiction.[3] See Arbaugh v. Y&H Corp.,
546 U.S. 500, 514 (2006); Adams, 697 F.2d at 1219; 2 Milton I.
Shador & Mary P. Squiers, Moore's Federal Practice - Civil § 12.30
(2018); 5B Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 1350 (3d ed. 2004). But see Richmond,
Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765,
768 (4th Cir. 1991) (applying a summary judgment standard in a
case where jurisdictional facts were not intertwined with merits
facts, rather than weighing the evidence and resolving factual

---

[3] Jurisdictional facts are not intertwined when they are "wholly unrelated to
the basis for liability." Kerns, 585 F.3d at 196; accord Brooks v. Shope, 430
F. App'x 220, 221 (4th Cir. 2011) (unpublished) (resolving a factual question
about citizenship because it was not related to proving the merits of the tort
claim).

disputes).[4] When such jurisdictional and merits facts are not intertwined, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence and may present "affidavit[s], depositions or live testimony" to meet its burden. Adams, 697 F.2d at 1219; accord United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 437-48 (4th Cir. 2009).

As footnote 3 notes, there are published Fourth Circuit cases that apply a summary judgment standard in non-intertwined scenarios, and in doing so, make no reference to a district court's authority to weigh evidence, as previously established in Adams. However, in those cases, it does not appear that the issue of a district judge's authority to weigh evidence was squarely presented to the Fourth Circuit.[5] Moreover, in at least two of

---

[4] A line of Fourth Circuit cases following the decision in Richmond, Fredericksburg & Potomac Railroad has broadly applied a summary judgment standard, where the issue of the proper 12(b)(1) standard was not specifically raised, without regard to whether the facts were "intertwined" and without reference to a district court's ability to act as fact-finder and weigh evidence in a factual 12(b)(1) challenge. See Balfour Beatty Infrastructure, Inc. v. Mayor of Baltimore, 855 F.3d 247, 251 (4th Cir. 2017); AtlantiGas Corp. v. Columbia Gas Transmission Corp., 210 F. App'x 244, 247 (4th Cir. 2006) (unpublished); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). It appears, however, that the Ninth Circuit decision, from which Richmond, Fredericksburg & Potomac Railroad draws the summary judgment standard, limits the application of such standard to intertwined cases. Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987). Presumably, the Fourth Circuit would do the same if the issue was squarely presented.

[5] Of the cases cited in footnote 3, the issue was most closely presented to the Fourth Circuit in Evans. In Evans, the appellant argued that, even though the district court said it dismissed the claims under Rule 12(b)(1), the court actually dismissed the claims under Rule 12(b)(6). Brief of Appellant at 7-9, Evans, 166 F.3d 642 (No. 98-1002). Additionally, the appellant argued that, because the case was dismissed under Rule 12(b)(6), the district court's consideration of evidence outside the pleadings converted it to a motion for summary judgment. Id. In response, the appellees argued that the district court dismissed the claims under Rule 12(b)(1) and, therefore, was permitted to

the cases, there were not material disputes of fact, and thus, there was no need to "weigh" the evidence. Balfour Beatty Infrastructure, Inc., 855 F.3d at 251; Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 769. Accordingly, it appears that the Richmond line of cases should not be interpreted as directly "conflicting" with Adams and its progeny, and this Court, therefore, may follow the well-established standard set forth in Adams.

Alternatively, to the extent that there is a direct conflict between the cases permitting district courts to weigh evidence and resolve disputed jurisdictional facts (Adams and progeny), and those applying a summary judgment standard (Richmond and progeny), this Court must follow Adams as it is the earlier-in-time decision. See McMellon v. United States, 387 F.3d 329, 333 (4th Cir. 2004). Moreover, the decision in Adams is consistent with more recent Supreme Court precedent and respected Civil Procedure treatises. See, e.g., Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co., 137 S. Ct. 1312, 1316 (2017) ("[W]here jurisdictional questions turn upon further factual development, the trial judge

---

consider and weigh evidence beyond the pleadings without converting it to a motion for summary judgment. Joint Brief for Appellees at 11-15, Evans, 166 F.3d 642 (No. 98-1002). Although the appellees brief mentioned a district court's ability to weigh evidence, the issue squarely before the Fourth Circuit was whether the district court decided the motion under Rule 12(b)(6) or under Rule 12(b)(1) to determine if it properly considered evidence outside the pleadings without converting the motion to one for summary judgment, not whether the court had the power to weigh evidence in a 12(b)(1) factual challenge. See Evans, 166 F.3d at 647 & n.3.

may take evidence and resolve relevant factual disputes."); Arbaugh, 546 U.S. at 514 (noting that "in some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own") (citing 2 Moore's Federal Practice § 12.30 (3d ed. 2005); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004)). Though those recent Supreme Court cases have not clearly defined the limitations on a trial court's authority to weigh evidence in the 12(b)(1) context, a review of case law from multiple circuits, including the Fourth Circuit, indicates that district courts may typically resolve factual disputes in 12(b)(1) motions unless the jurisdictional and merits facts are intertwined. See, e.g., Kerns, 585 F.3d at 192-93; Trentacosta, 813 F.2d at 1558; Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir. 1981).

The propriety of such procedural rule is further bolstered by the fact that "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh, 546 U.S. at 514. It is necessary for federal courts to have the ability to determine their own jurisdiction as soon as possible because "'federal courts are courts of limited jurisdiction'" and they must be cautious not to overstep the power authorized by the Constitution and federal statute. Gunn v. Minton, 568 U.S. 251, 256 (2013) (quoting

_Kokkonen v. Guardian Life Ins. Co. of America_, 511 U.S. 375, 377 (1994)). Accordingly, regardless of whether a "conflict" exists in the law, the Court concludes that, consistent with _Adams_, district courts are typically permitted to weigh evidence and resolve factual disputes to determine jurisdiction when such facts are <u>not</u> intertwined with the merits. _Adams_, 697 F.2d at 1219.

### 3. Facts Intertwined

The analysis in an intertwined case is more nuanced than the approach explained above for non-intertwined cases. When facts are said to be "intertwined," it means that facts necessary to prove jurisdiction overlap with facts necessary to prove the merits of the case such that a 12(b)(1) motion is, essentially, an indirect attack on the plaintiff's alleged factual merits. _Kerns_, 585 F.3d at 193. In such a scenario, the plaintiff is not only facing a jurisdictional challenge, but "'a challenge to the validity of h[er] claim.'" _Id._ (quoting _Williamson_, 645 F.2d at 415). Thus, when jurisdictional and merits facts are intertwined, "[i]t is the better view that . . . the entire factual dispute is appropriately resolved <u>only by a proceeding on the merits</u>," which entails either denying the 12(b)(1) motion and proceeding with the case, or converting the 12(b)(1) motion into a motion for summary

judgment on the merits, as explained in detail below.[6] Adams, 697 F.2d at 1219 (emphasis added); accord Kerns, 585 F.3d at 193, 196.

Of course, a trial court must first assume jurisdiction before it can deny the 12(b)(1) motion or convert it to a motion for summary judgment on the merits. See Kerns, 585 F.3d at 193. Therefore, to assume jurisdiction, the trial court should engage in a threshold analysis to ensure that the plaintiff's allegations are sufficient to confer jurisdiction. Rich v. United States, 811 F.3d 140, 145 (4th Cir. 2015). This step is, essentially, a facial analysis where "'a presumption of truthfulness should attach to the plaintiff's allegations'" to determine if they state facts that plausibly confer jurisdiction.[7] Id. (quoting Kerns, 585 F.3d at 193).

---

[6] Recent Supreme Court case law suggests that, in some intertwined cases, rather than proceeding to determine the intertwined jurisdictional and merits facts at the merits/trial stage, the better course is to conduct a proceeding addressing jurisdiction "as near the outset of the case as is reasonably possible," even if it "must inevitably decide some, or all, of the merits issues." Bolivarian, 137 S. Ct. at 1316-17, 1319. The Supreme Court in Bolivarian was primarily concerned with the need to protect a foreign sovereign from suit and used that objective to justify its decision. Id. Further, in a Foreign Sovereign Immunity Act case, such as Bolivarian, there is no right to a jury trial, so allowing a district court to decide jurisdictional issues at an early stage would not deprive the parties of the right to a jury on the overlapping merits issues. See 28 U.S.C. § 1330(a); see also Houston v. Murmansk Shipping Co., 667 F.2d 1151, 1152 (4th Cir. 1982). Therefore, a district court may be able to weigh evidence and decide intertwined factual issues without proceeding to the merits in cases such as Bolivarian where there are overriding concerns about protecting foreign sovereign immunity and where there is no risk of depriving the parties of the right to a trial by jury on the merits. However, such scenario is not before the Court in this case, and this Court, therefore, does not fully explore the parameters of a potential exception to the general rule that factual disputes in intertwined cases should be resolved in a proceeding on the merits.

[7] As noted earlier, a facial analysis borrows from the 12(b)(6) standard. Where the elements of the claim are also the basis for jurisdiction, conducting a facial analysis may also decide whether plaintiff has stated a claim for relief

Assuming the allegations pass the threshold analysis required in such intertwined jurisdictional/merits facts cases, then the trial court may either (1) deny the 12(b)(1) motion and proceed with discovery, with the understanding that a party will file a motion for summary judgment after discovery (if doing so would not be frivolous); or (2) treat the 12(b)(1) motion as one for summary judgment and take it under advisement until the parties have conducted adequate discovery – this is what courts have referred to as simply "proceeding on the merits," which is not to be confused with weighing the evidence and resolving factual disputes. Compare Carter v. United States, 694 F. App'x 918, 924 (4th Cir. 2017) (unpublished) (stating that a court should deny the 12(b)(1) motion before proceeding to the merits) with Lutfi v. United States, 527 F. App'x 236, 241-42 (4th Cir. 2013) (unpublished) (holding that the district court should have assumed jurisdiction and proceeded as if the defendant filed a motion for summary judgment).[8] Either way, the plaintiff must be afforded the same procedural safeguards "that would apply were the plaintiff facing a direct attack on the merits," specifically the ability to

---

on the merits under Rule 12(b)(6). See Kerns, 585 F.3d at 193 (citing Williamson, 645 F.2d at 415) (emphasis added).

[8] It is not clear which approach is preferred in the Fourth Circuit. Though these approaches are technically procedurally different, ultimately, under either approach, the trial court is no longer making a jurisdictional decision under Rule 12(b)(1) and, instead, is making a decision on the merits under the summary judgment standard in Federal Rule of Civil Procedure 56.

conduct discovery. Kerns, 585 F.3d at 193. At a minimum,

discovery should be adequate to "resolve the relevant factual

disputes." Kerns, 585 F.3d at 193, 196.[9]

## B. Mootness Standard

Defendant's motion to dismiss for lack of subject matter

jurisdiction asserts that the case is moot because Defendant paid

Plaintiff all that she is legally entitled to receive, and she

has, therefore, received "complete relief." A court loses

jurisdiction over a case when it becomes moot. Williams v. Ozmit,

716 F.3d 801, 809 (4th Cir. 2013). The mootness doctrine arises

from the "case and controversy" requirement of the United States

Constitution. U.S. Const. art. III, § 2. "[A] case is moot when

the issues presented are no longer 'live' or the parties lack a

legally cognizable interest in the outcome." Simmons v. United

Mortg. And Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011)

(quoting United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008))

---

[9] Kerns essentially held that the district court could limit discovery to the intertwined issue when it stated that the plaintiff "should be afforded an opportunity – at a minimum – to conduct discovery on the intertwined . . . issue," but the court did not specify whether the district court has discretion to limit discovery in both scenarios: when denying the 12(b)(1) motion or when treating the motion as one for summary judgment. Kerns, 585 F.3d at 196. Subsequent Fourth Circuit cases discussing the standard in intertwined cases only reference the need for "appropriate" discovery. See Carter, 694 F. App'x at 924; Rich, 811 F.3d at 148. Because such case law appears to allow limited discovery and because district courts generally have the discretion to control the scope of discovery, it logically follows that a district court may limit discovery to the intertwined issue whether it chooses to deny the 12(b)(1) motion or treat it like a motion for summary judgment. See Fed. R. Civ. P. 26(b); Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) ("The scope and conduct of discovery are within the sound discretion of the district court.") (citing Erdmann v. Preferred Research, Inc., 852 F.2d 788, 792 (4th Cir. 1988)).

(internal quotation marks omitted) (alterations in original). In other words, a case is moot when it is impossible for the court to grant relief to the prevailing party, such as when "complete relief" has been secured by a plaintiff. United States v. Springer, 715 F.3d 535, 540 (6th Cir. 2013); Simmons, 634 F.3d at 763.

### 1. Supreme Court Standard from Campbell-Ewald

The United States Supreme Court recently addressed mootness in the context of a defendant's offer of judgment under Federal Rule of Civil Procedure 68. Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 672 (2016). The Supreme Court held that a rejected offer, even when it provides the plaintiff the relief he or she seeks, does not moot a claim as it is considered an unaccepted settlement offer that does not divest the plaintiff of his or her interest in the case. Id. However, the Court expressly reserved decision on the hypothetical question of "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." Id. Comparing the offer of judgment in the case before it to railroad tax cases in which the parties actually received payment that fully satisfied their tax claims, the Supreme Court suggested that an offer of judgment or settlement is legally different than actual payment because, in the former situation, the plaintiff has not

15

received the money. Id. at 671 (citing California v. San Pablo & Tulare R.R. Co., 149 U.S. 308 (1893); Little v. Bowers, 134 U.S. 547 (1890); San Mateo County v. Southern Pacific R.R. Co., 116 U.S. 138 (1885)). Additionally, both the concurring and the dissenting opinions in Campbell-Ewald suggested that actual payment would moot a case because the plaintiff received full relief. See id. at 676 (Thomas, J., concurring) ("Because Campbell-Ewald only offered to pay Gomez's claim but took no further steps, the court was not deprived of jurisdiction."); id. at 679 (Roberts, C.J., dissenting); id. at 683 (Alito, J., dissenting)

## 2. Decisions Post-Campbell-Ewald

After the decision in Campbell-Ewald, courts have split on whether actual payment of full relief moots an individual's claim, with multiple decisions turning on whether the case was a class action. Compare Leyse v. Lifetime Entm't Servs., LLC, 679 F. App'x 44, 48 (2d Cir. 2017) (affirming the lower court's ruling that class certification was not warranted and that a deposit by the defendant of a full settlement and consent to judgment permits the court to enter judgment and moot the individual claim), S. Orange Chiropractic Ctr., LLC v. Cayan LLC, Civil No. 15-13069-PBS, 2016 U.S. Dist. LEXIS 49067, at *12-13 (D. Mass. Apr. 12, 2016) (holding that, even though the individual plaintiff's claims were moot, the class action may proceed), and Price v. Berman's Auto, Inc., No.

14-763-JMC, 2016 U.S. Dist. LEXIS 35807, at *7-10, *8-9 n.3 (D. Md. Mar. 21, 2016) (holding that an unconditional tender of full relief by cashier's check was sufficient to moot a claim in a case where there were no class action concerns), with Fulton Dental, LLC v. Bisco, Inc., 860 F.3d 541, 545-46 (7th Cir. 2017) (holding a deposit into an account with the court in the plaintiff's name before the plaintiff moved to certify the class was insufficient to moot the individual and potential class claims), Chen v. Allstate Ins. Co., 819 F.3d 1136, 1146-48 (9th Cir. 2016) (deciding, in the class action context, that the individual plaintiff's claims were not moot), and Ung v. Universal Acceptance Corp., 190 F. Supp. 3d 855, 860-63 (D. Minn. 2016) (declaring, in the class action context, that "there is no principled difference between a plaintiff rejecting a tender of payment and an offer of payment").[10] The Supreme Court has not yet resolved the split, and commentators disagree on how the Court will ultimately decide the unresolved hypothetical question. Compare Justiciability—Class Action Mootness—Campbell-Ewald Co. v. Gomez, 130 Harvard L. Rev. 427, 432 (2016)("If at some point, a defendant actually delivers

---

[10] The majority of the cases cited deal with class actions. As noted in Campbell-Ewald, in class action cases there are unique policy concerns about denying a class representative the opportunity to certify a class. Campbell-Ewald, 136 S. Ct. at 672 (majority opinion). Courts are more cautious when impacting rights of a large class of people, which leads them to be more cautious about mooting individual claims of class representatives. See, e.g., Chen, 819 F.3d at 1144-46 (refusing to deny an individual's claim as moot because the plaintiff had not yet had a chance to certify the class).

a payment constituting complete relief to a named plaintiff, it would be difficult to avoid the conclusion that the named plaintiff's claim has been mooted"), and Thomas D. Rowe, Jr., 13 Moore's Federal Practice § 68.04 (2018) ("In a case comprising only the plaintiff's individual claim, the sounder view is that the unconditional deposit of an amount that provides full relief moots the case."), with Katrina Christakis, et al., "So You're Telling Me There's a Chance!": The Post-Campbell-Ewald Possibility of Mooting a Class Action by "Tender" of Complete Relief, 71 Consumer Fin. L. Q. Rep. 237, 253 (2018) (arguing that only a few defendants have succeeded in mooting individual and class claims by tendering complete relief because of the "suspicion or outright hostility" of courts toward allowing defendants to moot claims).

### 3. Fourth Circuit Standard Post-Campbell-Ewald

An unpublished Fourth Circuit decision after Campbell-Ewald briefly addressed the impact of attempted payment of complete relief, holding that the case was not moot when the plaintiff returned a check[11] for the full amount of relief because the act of returning the check made the payment an unaccepted settlement offer. Bennett v. Office of Fed. Emp.'s Grp. Life Ins., 683 F. App'x 186, 188-89 (4th Cir. 2017) (unpublished). The court did not

---

[11] The Fourth Circuit's opinion, as well as the parties' briefs in that case, describe the financial instrument as a "check," not a cashier's check. See Bennett v. Office of Fed. Emp.'s Grp. Life Ins., 683 F. App'x 186, 188-89 (4th Cir. 2017) (unpublished); Informal Response Brief of Appellees at 13-14, Bennett, 683 F. App'x 186 (No. 16-1306), 2016 WL 2772693, at *11-14.

address the hypothetical question in Campbell-Ewald as to whether actual payment of full relief moots a claim, nor did it analyze case law from other jurisdictions addressing such question. Additionally, it did not comment on what would happen if the check were not returned or if the defendant had made a more guaranteed form of payment, such as a cashier's check or a deposit in an account payable to the plaintiff. Therefore, the hypothetical question raised in Campbell-Ewald remains unanswered in this Circuit.

Although there is no controlling precedent on this issue, at least two district court cases from within the Fourth Circuit support the proposition that payment of complete relief can moot a claim. First, in Price, the defendant provided the plaintiffs a cashier's check for the full amount of relief, which the plaintiffs subsequently returned. Price, 2016 U.S. Dist. LEXIS 35807, at *4-5. The Maryland district court held that, because the plaintiffs returned the cashier's check, the claim was not moot at that time; however, if the defendant reissued the cashier's check to the plaintiffs and renewed its motion, the court would grant the motion to dismiss as moot. Id. *8-10. The Price court reasoned that a cashier's check would be adequate to moot a claim because the plaintiffs would possess all the money they would be entitled to had they prevailed through litigation. Id. at *7. Second, another District of Maryland case, citing to the dissents

in Campbell-Ewald, also decided that actual payment of complete relief would moot a claim. Gray v. Kern, 143 F. Supp. 3d 363, 366-67 (D. Md. 2016), rev'd on other grounds, 702 F. App'x 132, 143 (4th Cir. 2017) (unpublished). Finding such cases persuasive, this Court concludes that, when an individual plaintiff receives complete relief for her claims, that plaintiff no longer has a live case or controversy because there is no additional relief that she can hope to obtain through further litigation. Gray, 143 F. Supp. 3d at 366-67; Price, 2016 U.S. Dist. LEXIS 35807, at *8-10.

### 4. Whether Judgment is Necessary for Complete Relief

Even if a defendant purports to pay a plaintiff the full amount of his or her claim, a judgment may be necessary to afford the plaintiff "complete relief" in some circumstances. See Simmons, 634 F.3d at 765-66 (holding that payment that purportedly satisfied the entire claim did not moot the case because it was conditional and did not include the force of an offer for judgment); Winston v. Stewart Title and Guar. Co., 920 F. Supp. 2d 631, 635 (D. Md. 2013) (reasoning that payment of a check without consenting to an entry of judgment would not give the plaintiff full relief because of the possibility that the defendant's check would be defective). Importantly, part of the reason the offer of judgment in Campbell-Ewald was insufficient to moot the case was because there was no guarantee that the defendant would actually

pay plaintiff the full amount necessary to satisfy her claim. Campbell-Ewald, 136 S. Ct. at 672. While a judgment may be necessary to moot a claim in some scenarios, a judgment may be unnecessary to moot a claim if payment is assured in another way, such as through a duly issued cashier's check which, unlike a personal check, is guaranteed by a bank. See Price, 2016 U.S. Dist. LEXIS 35807, at *8-9.

### 5. Proper Calculation of Complete Relief for Overtime Under the FLSA

In order to determine whether a defendant's proffer of a cashier's check to a plaintiff for an FLSA overtime claim effectuates complete relief, a court must determine whether the amount of the cashier's check was properly calculated to cover unpaid overtime wages. Under the FLSA, employees are entitled to receive additional payment for their overtime hours unless they can be classified as "exempt" from overtime payment. 29 U.S.C. § 213 (listing the types of employees classified as exempt). Employees may bring suit against their employers for unpaid overtime if they believe they have been either willfully or mistakenly misclassified as exempt employees. See, e.g., Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 353-54 (4th Cir. 2011). If an employer alleges that an employee's overtime claim has been rendered moot by sufficient payment effectuating complete

relief, the trial court must determine whether the payment was calculated at the proper overtime rate.

Generally, under the FLSA, overtime is paid to non-exempt employees at the rate of time and a half, which means that an employee is paid for each hour at their normal hourly rate plus an additional amount equal to half of the employee's hourly rate. 29 U.S.C. § 207; United States Dep't of Labor v. Fire & Safety Investigation Consulting Servs., LLC, No. 18-1632, 2019 U.S. App. LEXIS 3971, at *6-7 (4th Cir. Feb. 8, 2019) (explaining how to determine the proper rate for a time-and-a-half calculation). The fluctuating workweek method is an alternative method of calculating overtime for non-exempt employees that are paid a set salary even if their hours change week to week. 29 C.F.R. § 778.114(a). There are four requirements to apply the fluctuating workweek method: (1) the employee's hours fluctuate; (2) the employee receives a fixed salary that does not vary with the number of hours worked; (3) the employee's salary is sufficiently high that he or she does not make less than minimum wage in any given week; and (4) the employee and the employer have a clear and mutual understanding that the fixed salary will be paid regardless of the number of hours worked. 29 C.F.R. § 778.114(a); see Baclawski v. Fioretti, Civil No. 3:15-CV-417-DCK, 2017 U.S. Dist. LEXIS 111317, at *12-13 (W.D.N.C. July 18, 2017).

If the employee meets these criteria, the employee is paid for overtime hours at a rate of half of their average hourly salary each week instead of the standard time-and-a-half calculation. 29 C.F.R. § 778.114. The theory behind the fluctuating workweek method for calculating overtime is that a salaried employee who meets the criteria has already received compensation for the regular and overtime hours worked because there are no set hours each workweek. Therefore, the "time" portion of time-and-a-half pay is already compensated, and the employer need only pay the employee the additional "half." 29 C.F.R. § 778.114; see Desmond, 630 F.3d at 357 (explaining that, because the employees agreed to a straight time salary for all their hours, their only loss was a fifty percent premium for overtime hours). In other words, the employee has bargained to be paid the same rate whether he or she works under or over forty hours (the "time" portion of time and half), and in exchange for the employer's promise to pay the same rate every week, the employee only receives the "half" portion of time and a half if he or she works over forty hours per week.[12]

---

[12] Although courts in other jurisdictions disagree, the Fourth Circuit has held that the half-time calculation of the fluctuating workweek method can apply to calculate overtime damages in misclassification cases. Compare Desmond, 630 F.3d at 354 (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 579-80 (1942)) (holding that the half-time calculation of the fluctuating workweek method could apply to calculate damages in misclassification cases) with Boyce v. Indep. Brewers United Corp., 223 F. Supp. 3d 942, 948-49 (N.D. Cal. 2015) (holding that the fluctuating workweek method cannot apply in a misclassification case).

For example,[13] consider an hourly employee who works for $10 an hour and works thirty hours in week one making $300 for the week, forty hours in week two making $400, and fifty hours in week three making $550. The $550 is calculated by adding $400 for the forty hours and $150 for the ten hours of overtime at a rate of $15 per hour (one and a half times the employee's normal $10 rate). On the other hand, consider a salaried employee who makes $400 per week, qualifies under the fluctuating workweek method, works the same number of hours as the hourly employee each week, and gets $400 in week one, $400 in week two, and $440 in week three. The $440 is calculated by dividing the guaranteed $400 weekly salary by the total number of hours worked that week to get the average hourly salary for the week ($400 ÷ 50 hours = $8.00 per hour). The eight dollars are then divided in half ($8.00 ÷ 2 = $4.00 per hour) and multiplied by the number of hours worked overtime that week ($4.00 x 10 hours = $40). That number is then added to the weekly salary ($400 + $40 = $440). As shown by this example, the employee essentially bargained away the time-and-a-half rate he or she would have received as an hourly employee in order to receive a guaranteed $400 per week, even if the employee works less than forty hours.

---

[13] The Department of Labor provides additional examples of how to calculate overtime pay on its website. Handy Reference Guide to the Fair Labor Standards Act, Computing Overtime Pay, U.S. Dep't of Labor, https://www.dol.gov/whd/regs/compliance/hrg.htm#14 (September 2016).

## C. 12(b)(6) Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) should be granted if a complaint fails to "allege facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). A Rule 12(b)(6) motion "tests the sufficiency of a complaint and 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Johnson v. Portfolio Recovery Assocs., LLC, 682 F. Supp. 2d 560, 567 (E.D. Va. 2009) (quoting Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). As such, the district court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id.

## III. ANALYSIS

## A. 12(b)(1) Motion

This case is before the Court on a 12(b)(1) motion for lack of subject matter jurisdiction because Defendant claims that when it paid Plaintiff for her overtime hours, using the fluctuating workweek calculation method, it eliminated the "case and controversy" over this portion of her case. For clarity, the Court begins its analysis of Defendant's mootness argument by briefly reviewing the 12(b)(1) framework utilized in this case.

When presented with a 12(b)(1) motion, a trial court must first determine if the jurisdictional challenge is facial (attacking the adequacy of jurisdictional allegations on the face of the complaint) or factual (attacking the truthfulness of the jurisdictional claims). Beck, 848 F.3d at 270. If presented with a facial challenge, the Court must look only to the face of the complaint and accept its jurisdictional allegations as true to determine if jurisdiction has been sufficiently pled. Adams, 697 F.2d at 1219. If the challenge is factual, however, the trial court may consider evidence beyond the pleadings to determine if it can exercise jurisdiction. Velasco, 370 F.3d at 398. Whether or not courts can weigh such evidence and make findings of fact depends on whether the facts necessary to prove jurisdiction are intertwined with the facts necessary to prove the merits of the case. Kerns, 585 F.3d at 196.

When the facts are not intertwined (meaning the facts necessary to prove jurisdiction are unrelated to the facts necessary to prove the merits of the plaintiff's claim), the trial court may weigh evidence and make findings of fact to resolve the jurisdictional dispute. See Arbaugh, 546 U.S. at 514; Adams, 697 F.2d at 1219. In such a case, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence. Adams, 697 F.2d at 1219.

In contrast, when facts are intertwined (meaning that the facts necessary to prove jurisdiction overlap with the facts necessary to prove the merits of the claims), a trial court should not weigh evidence and make findings of fact at the 12(b)(1) stage because doing so would deprive the parties of discovery and the right to a jury that parties are afforded in proceedings on the merits. Arbaugh, 546 U.S. at 514; Kerns, 585 F.3d at 193. Instead, the trial court should assume jurisdiction exists (if the jurisdictional allegations are sufficient on their face) and proceed with limited or full discovery after either (1) denying the 12(b)(1) motion, or (2) converting the 12(b)(1) motion into a motion for summary judgment on the merits and taking it under advisement until discovery is completed and it is ripe for summary judgment – a process that courts have referred to as "proceeding on the merits." See Carter, 694 F. App'x at 924; Rich, 811 F.3d 140. Below, the Court applies this framework to the facts of this case.

## 1. Facial or Factual Challenge

Defendant makes a factual jurisdictional challenge because it challenges the accuracy of jurisdictional allegations based on a change in factual circumstances after the complaint was filed. Defendant does not make a facial challenge because it is not challenging the adequacy of Plaintiff's allegations on the face of

her complaint.  Therefore, the Court may consider evidence beyond the pleadings.  See Velasco, 370 F.3d at 398.

## 2. Intertwined or Not Intertwined

To determine the manner in which the Court may consider the evidence presented, the Court must evaluate whether the jurisdictional facts are intertwined with the merits facts. Kerns, 585 F.3d at 196.  This, of course, requires the Court to consider if the merits facts necessary for Plaintiff to succeed on her claim overlap with the jurisdictional facts raised by Defendant's assertion of mootness.

First, the Court looks to the essential elements of Plaintiff's claim for overtime under the FLSA.[14]  In order to succeed on the merits of her claim, Plaintiff must prove (1) that she was an employee of the Defendant, (2) that she worked overtime hours and the "amount and extent" of such work, (3) that Defendant failed to pay her the requisite overtime premium under the FLSA for those hours, and (4) that Defendant knew of Plaintiff's uncompensated time.  See Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017); Talton v. I.H. Caffey Distrib. Co., 124 F. App'x

---

[14] Plaintiff claims that she is entitled to overtime because Defendant willfully misclassified her as exempt from overtime by intentionally giving her the titles of "Manager" and "Shift Supervisor" despite taking away her managerial and supervisory duties.  Employees with primarily managerial or supervisory jobs can qualify under the "executive" exemption if they (1) are paid a salary at a certain rate, (2) have the primary duty of management, (3) "customarily and regularly direct the work of two or more other employees," and (4) have the authority to hire and fire.  29 C.F.R. § 541.100; accord 29 U.S.C. § 213(a)(1); Grace v. Family Dollar Stores, Inc., 637 F.3d 508, 513 (4th Cir. 2011).

760, 763 (4th Cir. 2005) (unpublished); Pforr v. Food Lion, Inc., 851 F.2d 106, 108-09 (4th Cir. 1988); see also Seagram v. David's Towing & Recovery, Inc., 62 F. Supp. 3d 467, 474 (E.D. Va. 2014); Kevin F. O'Malley, et al., 3C Federal Jury Practice and Instructions: Civil § 175:20 (6th ed. 2014). The disputed element here is whether Defendant failed to pay Plaintiff the requisite overtime premium as required by the FLSA.

Resolving such dispute necessarily depends on what method applies to calculate the overtime premium: the time-and-a-half method or the fluctuating workweek method. While time and a half is the default method under the FLSA, the fluctuating workweek method is a product of case law and regulation that require proof of four elements: (1) the employee's hours fluctuate each week, (2) the employee receives a fixed salary that does not vary when hours fluctuate, (3) the employee's pay did not fall below minimum wage, and (4) the employer and employee have a clear and mutual understanding that fixed payment will be made for fluctuating hours. 29 C.F.R. 778.114(a); Baclawski, 2017 U.S. Dist. LEXIS 111317, at *12-13. Critical to the inquiry in this case is a question of fact about whether the parties had a clear and mutual understanding.

Second, having reviewed the merits facts necessary to succeed on Plaintiff's claim, the Court looks to the facts necessary to establish jurisdiction in order to determine whether the merits

29

facts and jurisdictional facts overlap. The jurisdictional issue of mootness in this case turns on whether the Defendant's payment for overtime under the fluctuating workweek method constituted "complete relief." See, e.g., Price, 2016 U.S. Dist. LEXIS 35807, at *8-10. The resolution of such issue, of course, turns on whether the fluctuating workweek method is even applicable in this case. Plaintiff advances two arguments against application of the fluctuating workweek method: (1) a legal argument that the fluctuating workweek method can never apply in cases where an employer willfully misclassifies an employee as exempt from overtime, and (2) a factual argument that the fluctuating workweek method cannot apply in this case because there was not a clear and mutual understanding between the parties that Plaintiff's salary was intended to cover fluctuating hours.

### a. Legal Argument

The first jurisdictional argument (that the fluctuating workweek method cannot apply in willful misclassification cases), though predicated on the assumption that Plaintiff can establish willfulness, is presented to this Court as a legal issue that the Court can resolve without any discussion of the facts of this case. Further, there are no relevant facts that Plaintiff can discover that would change the outcome of the Court's decision on such legal issue. Cf. Rich, 811 F.3d at 146 (holding that a district court did not abuse its discretion in denying discovery on a

30

jurisdictional issue because there were "no facts that [the plaintiff] could have uncovered in discovery [that] would establish jurisdiction"). Therefore, this issue, as presented to the Court, is not intertwined with the facts necessary to prove the merits of Plaintiff's case and the Court can resolve it at this stage of the proceeding without allowing discovery.

Because controlling precedent in the Fourth Circuit clearly applies the half-time calculation of the fluctuating workweek method in non-willful misclassification cases, Plaintiff attempts to draw a distinction between willful and non-willful misclassification. See Desmond, 630 F.3d at 357-59. Relying on the reasoning in district court cases from other jurisdictions, Plaintiff argues that the fluctuating workweek method cannot apply in willful misclassification cases because there can be no clear and mutual understanding that a fixed salary covers fluctuating hours when an employer misleads an employee into believing the employee is exempt from overtime. See, e.g., Boyce, 223 F. Supp. 3d at 948-49 (holding that the fluctuating workweek method cannot apply in any misclassification case, without regard to willfulness, because a clear and mutual understanding "cannot exist where the agreement is based on the false premise that the employee is not entitled to any overtime"); Costello v. Home Depot, 944 F. Supp. 2d 199, 207-08 (D. Conn. 2013) (same). Defendant argues that such distinction is not recognized in the Fourth

Circuit, rendering the fluctuating workweek method applicable in both willful and non-willful misclassification cases. See Desmond, 630 F.3d at 357-59.

In the Fourth Circuit's Desmond case, the district court ruled in the plaintiffs' favor, finding that the defendant willfully misclassified the plaintiffs as "exempt," yet also ruled in the defendant's favor, finding that the fluctuating workweek method applied. Id. at 352. The issues directly before the Fourth Circuit on cross appeals were (1) whether the half-time rate of the fluctuating workweek calculation method applied to calculate damages in misclassification cases and (2) the proper standard for determining whether the employer acted willfully, a finding that impacted the number of years that the plaintiffs could recover overtime wages. Id. at 352, 357-58; Brief of Appellee/Cross Appellant at 1, Desmond, 630 F.3d 351 (No. 09-2189). The Fourth Circuit affirmed the district court's application of the half-time rate of the fluctuating workweek calculation method on the facts before it, but remanded on the issue of willfulness, finding that a genuine issue of material fact existed as to whether the employer acted willfully, without any suggestion that a finding of willfulness on remand would undercut the application of the fluctuating workweek method. Id. at 359. Logically, it seems clear that the Fourth Circuit anticipated that the lower court would apply the fluctuating workweek method, whether or not it

found that the employer willfully misclassified the employees, otherwise, why would they remand. Thus, while Desmond may not be directly on point because the Fourth Circuit did not expressly decide the issue of whether the fluctuating workweek method could be applied in willful misclassification cases, the logical implication of the decision is that the fluctuating workweek method can apply in such cases.[15] Id. at 352. Therefore, this Court relies on Desmond as Circuit authority standing for the proposition that the half-time calculation of the fluctuating workweek method can apply to calculate damages in willful misclassification cases if all requirements for its application are satisfied.[16]

### b. Factual Argument

The second jurisdictional argument advanced by Plaintiff is a factual argument contending that Defendant's payment did not

---

[15] Though application of the fluctuating workweek method in willful misclassification cases was not directly presented to the court in Desmond, the Appellants did present a policy argument that applying the fluctuating workweek method would be inappropriate because it would encourage employers to willfully misclassify their employees so that they would only have to pay half time instead of time and a half for overtime. Brief of Appellants at 6-7, Desmond, 630 F.3d 351 (No. 09-2189). Such argument did not appear to impact the court's decision to apply the fluctuating workweek method even though the case before the court alleged willful misclassification.

[16] The Court observes that the FLSA provides for criminal penalties if a defendant's violation of the FLSA was willful. 29 U.S.C. § 216(a). This provides further context for the decision not to differentiate between willful and non-willful violations when applying the fluctuating workweek method to civil misclassification cases, as the statutory scheme already provides for a mechanism to deter willful violations of the FLSA. Cf. Lanza v. Sugarland Run Homeowners Ass'n, 97 F. Supp. 2d 737, 740 (E.D. Va. 2000) (declining to impose civil punitive damages for willful violations of the FLSA because they would be "inconsistent with the statute's remedial scheme" and are unnecessary because criminal penalties existed).

33

render this case moot and deprive the Court of jurisdiction because Defendant calculated the payment using the fluctuating workweek method, and the fluctuating workweek method does not apply in this case because the parties lacked a clear and mutual understanding that Plaintiff's salary was intended to cover fluctuating hours. Like Plaintiff's merits-based argument, this jurisdictional argument requires proof of facts necessary to determine which overtime calculation method was applicable. Accordingly, there is clearly substantial overlap in the facts necessary to prove the merits of Plaintiff's overtime claim and the facts necessary to resolve this jurisdictional issue. As discussed above, both issues turn on whether the parties had a clear and mutual understanding that Plaintiff's salary was intended to cover fluctuating hours.

Because facts necessary to determine jurisdiction are intertwined with the facts necessary to determine the merits, it would be improper for the Court to resolve such factual disputes at this stage of the case as it would deprive the parties of their right to a jury trial on the merits issues. Arbaugh, 546 U.S. at 514 ("If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts."); Baclawski, 2017 U.S. Dist. LEXIS 111317, at *15 ("Under the circumstances, the undersigned finds that this matter should go to a jury to weigh the parties' evidence, or lack thereof, that there was a clear and mutual understanding about a fixed payment

for fluctuating hours."); see also Seymour v. PPG Indus., 891 F. Supp. 2d 721, 736-37 (W.D. Pa. 2012) (holding that the court could not moot a case in which there was a dispute about the proper calculation of damages for an overtime violation because "the facts are facts which would normally be resolved by the jury"). Thus, the Court should assume jurisdiction, if the jurisdictional allegations are sufficient, and proceed to the merits by either denying the 12(b)(1) motion and permitting discovery to proceed, or converting it to a motion for summary judgment on the merits and permitting discovery to proceed. See Rich, 811 F.3d at 145; see also Kerns, 585 F.3d at 193.

### 3. Assuming Jurisdiction to Reach the Merits

In order for the Court to assume jurisdiction, the Court must engage in the threshold analysis, described herein as being similar to a "facial" analysis, and ask whether Plaintiff states facts in her complaint that plausibly confer jurisdiction. See Carter, 694 F. App'x at 924; Rich, 811 F.3d at 145; see also infra Part II.A.3. Plaintiff has adequately alleged, and Defendant does not contest, that this Court had federal subject matter jurisdiction under 28 U.S.C. § 1331 when suit was filed because her claim for overtime arises under the FLSA, which is a federal law. Compl. ¶ 6.

Furthermore, to the extent that circumstances have purportedly changed because Defendant tendered payment after Plaintiff filed suit, the continued exercise of jurisdiction

remains proper because there is a "live" controversy over the proper overtime calculation method. See Simmons, 634 F.3d at 763 (stating that a case is moot and a court no longer has jurisdiction when the issues are no longer "live"). Plaintiff directly asserts in her complaint that she is owed damages calculated at the time-and-a-half rate and advances facts in support of her overtime claim. Compl. ¶ 27. For example, the language of the employment contracts attached to her complaint,[17] and the facts alleged in the complaint about the lack of any discussion between the parties about what hours the salary was intended to cover, plausibly support her ongoing request for damages at the time-and-a-half rate. See Pl.'s Ex. B, ECF No. 1-2; Compl. ¶¶ 13, 18. The existence of the open question, about the proper overtime calculation method, is sufficient for the Court to assume that jurisdiction continues to exist.

### 4. Proceeding on the Merits

Because a continued assumption of jurisdiction is appropriate, in order to protect the Plaintiff's right to discovery and a jury trial on the merits, the Court must either deny the 12(b)(1) motion and permit discovery to proceed, or convert it to a motion for summary judgment on the merits and permit discovery

---

[17] Federal Rule of Civil Procedure 10(c) allows the Court to consider documents attached to the pleadings. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

to proceed.  See Arbaugh, 546 U.S. at 514 (discussing the need to protect the right to a trial by jury on the merits); Kerns, 585 F.3d at 193, 196 (discussing the need to allow for procedural protections, such as discovery, when the jurisdictional and merits facts are intertwined, before proceeding on the merits).  Here, for the following reasons, the Court finds that the better course is to deny the 12(b)(1) motion to dismiss and proceed with full discovery, as requested by Plaintiff.  This is not a large, complex case with numerous claims, such that isolating the intertwined issue, taking the motion under advisement, and proceeding with limited discovery would provide for a more effective and efficient resolution of the case.  Rather, this case is limited to two FLSA claims between an individual Plaintiff and a single employer.  The intertwined factual issue, of whether there was a clear and mutual understanding such that payment was sufficient, is the main issue in the case.  Taking the motion under advisement and attempting to address it after limited discovery will cause unnecessary delay. Accordingly, the Court **DENIES** the 12(b)(1) motion to dismiss.  If, after discovery, Defendant believes that no genuine issue of material facts exists as to this issue, then Defendant may file a motion for summary judgment on the merits.

## B. 12(b)(6) Motion

In addition to Defendant's 12(b)(1) motion to dismiss the overtime claim for lack of subject matter jurisdiction, also before the Court is Defendant's 12(b)(6) motion to dismiss Plaintiff's claim for unpaid regular time.  Plaintiff claims that she is owed her average hourly rate, plus full liquidated damages, for sixteen and a half hours of "uncompensated regular time" she spent in training.  Compl. ¶ 24. Defendant argues that, because Plaintiff's complaint does not allege that Defendant's failure to pay her for this time caused her weekly payment to fall below the statutory minimum wage, she has not stated a claim for unpaid wages under the FLSA.

### 1. Stating a Claim for Regular Time Wages

The FLSA does not protect against all improper payment practices for regular hours that are actionable in a civil lawsuit, but, rather, protects against minimum wage violations for failure to pay for regular hours.  29 U.S.C. § 206.  Accordingly, an employer does not violate the FLSA unless the total weekly compensation divided by the number of hours worked yields an hourly rate below "minimum wage."  Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1198 n.6 (4th Cir. 1969).  Therefore, to state a plausible claim for unpaid wages for regular time (as opposed to overtime) under the FLSA, Plaintiff must allege enough facts for the Court to infer that her weekly hourly wage rate fell below the

federal minimum wage of $7.25 per hour. See Gregory v. FedEx Ground Package Sys., No. 2:10cv630, 2012 U.S. Dist. LEXIS 87798, at *24-25 (E.D. Va. May 9, 2012), report and recommendation adopted by Gregory v. FedEx Ground Packaging Sys., No. 2:10cv630, 2012 U.S. Dist. LEXIS 87830, at *4 (E.D. Va. June 22, 2012) ("[A]n employer's failure to pay an employee for each hour worked is not a violation of § 206. Rather, an employer violates the FLSA only when an employee's compensation for the week falls below the statutory minimum . . . ."); Avery v. Chariots for Hire, 748 F. Supp. 2d 492, 501 (D. Md. 2010) ("Plaintiffs have alleged that they were unpaid for certain hours that they worked, but have not alleged that they were not paid the statutory minimum for each of the total number of hours they worked. Therefore, Plaintiffs have not stated a claim for unpaid wages under the FLSA.").

### 2. Sufficiency of the Complaint

Plaintiff's complaint seeks payment at her normal rate (approximately $16 an hour) plus liquidated damages for the uncompensated hours she worked on mandatory training.[18] Compl. ¶ 24. Plaintiff does not allege that the failure to compensate her for the additional training hours caused her average wages for the

_____

[18] Specifically, Plaintiff alleges that she completed four hours of training on January 3, 2015, two and a half hours of training on January 4, 2015, two hours of training on December 29, 2015, two hours of training on December 31, 2015, and six hours of training in January 2017 (a specific date is not provided) for a total of sixteen and a half hours. Compl. ¶ 28. She requests damages at a rate of approximately $16 an hour for these hours, for a total of $267.78, plus liquidated damages. Compl. ¶¶ 28, 37.

week to fall below the minimum rate of $7.25 an hour. Plaintiff argues in her response to the 12(b)(6) motion that, "[b]y implication," her complaint alleges that Defendant violated the FLSA by failing to pay her the statutory minimum when the training hours are included in the number of hours worked for those weeks. Pl.'s Resp. 6, ECF No. 11. However, such alleged implication is not apparent on the face of the complaint, rendering the allegations insufficient to satisfy the plausibility pleading standard. See Twombly, 550 U.S. at 554. Therefore, the complaint does not sufficiently allege an FLSA claim for Plaintiff's unpaid regular time, and the Court **GRANTS** Defendant's 12(b)(6) motion as to such claim.

### 3. Leave to Amend

Plaintiff requests that, if the Court dismisses her regular-time claim under Rule 12(b)(6), she be granted leave to amend her complaint. Pl.'s Resp. 6. The Federal Rules of Civil Procedure provide that "court[s] should freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts should only deny leave to amend when (1) there would be prejudice to the opposing party, (2) the moving party acted in bad faith, or (3) the amendment would be futile. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). An amendment is futile if the claim would still be dismissed after the amendment.

See United States ex rel. Wilson v. Kellogg Brown Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).

Here, Defendant argues that an amendment would be futile because, even if Plaintiff's amended complaint properly alleged that she was paid below the $7.25 statutory minimum, her claim would be dismissed as moot because she has been more than fully compensated by the cashier's check paying her at a rate of $16 an hour. See Price, 2016 U.S. Dist. LEXIS 35807, at *8-10; see also Def.'s Br. 21-22, ECF No. 10. In response, Plaintiff broadly argues that she is entitled to more damages. Pl.'s Resp. 6.

With regard to Defendant's argument that the amended claim would be moot, because facts relevant to the merits of Plaintiff's minimum wage claim appear to be intertwined with facts relevant to the jurisdictional issue of mootness, this Court declines to find that amendment would be "futile."[19] This Court cannot resolve factual disputes over damages without depriving Plaintiff of the procedural protections afforded in a proceeding on the merits.

---

[19] To succeed on the merits of her claim for minimum wage, Plaintiff needs to prove that "(1) [she] was employed by the defendant; (2) [she] engaged in commerce or in the production of goods for commerce; and (3) [she] was not compensated for all hours worked during each work week at a rate equal to or greater than the then-applicable minimum wage." Urquia v. Law Office of Kyle Courtnall, PLLC, No. 1:14-cv-00056, 2014 U.S. Dist. LEXIS 189569, at *7 (E.D. Va. May 19, 2014) (citing 29 U.S.C. § 206). The jurisdictional issue depends on whether the amount Defendant paid was complete relief for Plaintiff's minimum wage claims. Both the third element of her claim and the jurisdictional issue require proof of the number of hours Plaintiff worked and the compensation she received for those hours.

Notwithstanding Defendant's payment, this Court has substantial reservations about whether Plaintiff can, in good faith, allege that her wages fell below $7.25 an hour in the weeks she completed unpaid training. Plaintiff's timecards attached to her complaint show the number of additional hours she alleges that she worked in the weeks she completed training. Pl.'s Exs. E-G, ECF No. 1-5 to 1-7. Plaintiff only alleges that the training hours, not the other regular hours each week, were unpaid. Compl. ¶ 28. If Plaintiff was paid her salary, or at an hourly rate of $16 for the other hours worked in those weeks, it appears questionable that her average pay rate would fall below $7.25 an hour based on a few unpaid hours.[20]

That said, because Defendant does not argue futility on such grounds, and because the Court is wary to speculate regarding the proper mathematical calculations, the appropriate course is to afford Plaintiff the opportunity to amend her complaint. cf. Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980) ("[C]onjecture about the merits of the litigation should not enter into the decision whether to allow amendment."). For these

---

[20] For example, Plaintiff claims she was not paid for 4 hours of training on December 29 and December 31, 2015. Compl. ¶ 28. In addition to the 4 hours of allegedly unpaid training, Defendant's timecard indicates that she worked 4.40 hours that week, for a total of 8.40 hours. Pl.'s Ex. E. Assuming that she was paid for the 4.40 hours at her regular rate of $16 an hour, Plaintiff made $70.40 that week. When the weekly pay of $70.40 is divided by the 8.40 hours of work, the rate is equal to approximately $8.38 an hour, which is $1.13 over minimum wage.

reasons, and because leave to amend should be freely given, the Court **PROVIDES** Plaintiff leave to amend her complaint to state an FLSA claim for unpaid regular hours, if she can do so in good faith.

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's overtime claim for lack of subject matter jurisdiction is **DENIED**. Defendant's motion to dismiss Plaintiff's regular time claim for failure to state a claim is **GRANTED**, and Plaintiff is **PROVIDED** leave to amend her complaint to state an FLSA claim for unpaid regular hours within **twenty-one days (21) days** of the date of this Opinion and Order, if she can do so in good faith.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 27, 2019

43